Exhibit A

# ADJUSTABLE RATE NOTE
# (HOME EQUITY CONVERSION)

FHA Case No. ▮
Loan No. ▮

AUGUST 31, 2009

123 GAMAGE AVENUE, AUBURN, MAINE 04210-4528

[Property Address]

### 1. DEFINITIONS
"Borrower" means each person signing at the end of this Note.
"Lender" means   GENERATION MORTGAGE COMPANY

and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

### 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for amounts to be advanced by Lender to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated  AUGUST 31, 2009  ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advanced by Lender, plus interest, if not due earlier, are due and payable on  SEPTEMBER 20 , 2086 . Interest will be charged on unpaid principal at the rate of  THREE AND 516/1000  percent ( 3.5160 %) per year until the full amount of principal has been paid. The interest rate may change in accordance with Paragraph 5 of this Note. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month.

### 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT
(A) Time
Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 7 of this Note.
(B) Place
Payment shall be made at
GENERATION MORTGAGE COMPANY

3565 PIEDMONT ROAD SUITE 300,
ATLANTA, GA 30305                                                                      , or any such other place as Lender may designate in writing by notice to Borrower.
(C) Limitation of Liability
Borrower shall have no personal liability for payment of the debt. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If this Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

### 5. INTEREST RATE CHANGES
(A) Change Date
The interest rate may change on the first day of  NOVEMBER, 2009 , and on ☐ that day of each succeeding year  ☒ the first day of each succeeding month. "Change Date" means each date on which the interest rate could change.
(B) The Index
Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the average of interbank offered rates for one-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*, rounded to three digits to the right of the decimal point. The "Current Index" means the most recent Index figure available 30 days before the Change Date, and if the day that is 30 days before the Change Date is not a Sunday or Monday and not the first business day of the week, the Current Index will be the Index as published the first business day of that week. If the day that is 30 days before the Change Date is a Sunday or Monday and not the first business day of the week, the Current Index will be the Index as published the first business day of the immediately prior week. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.
(C) Calculation of Interest Rate Changes
Before each Change Date, Lender will calculate a new interest rate by adding a margin of  THREE AND 250/1000 percentage points (  3.25000 %) to the Current Index. Subject to the limits stated in Paragraph 5(D) of this Note, this amount will be the new interest rate until the next Change Date.
(D) Limits on Interest Rate Changes
☐ The interest rate will never increase or decrease by more than two percentage points (2.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in Paragraph 2 of this Note.
☒ The interest rate will never increase above  THIRTEEN AND 516/1000  percent ( 13.51600 %).

**(E) Notice of Changes**

Lender will give notice to Borrower of any change in the interest rate. The notice must be given at least 25 days before the new interest rate takes effect, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the Current Index and the date it was published, (vi) the method of calculating the adjusted interest rate, and (vii) any other information which may be required by law from time to time.

**(F) Effective Date of Changes**

A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date, unless the Change Date occurs less than 25 days after Lender has given the required notice. If the interest rate calculated in accordance with Paragraphs 5(C) and 5(D) of this Note decreased, but Lender failed to give timely notice of the decrease and applied a higher rate than the rate which should have been stated in a timely notice, then Lender shall recalculate the principal balance owed under this Note so it does not reflect any excessive interest.

## 6. BORROWER'S RIGHT TO PREPAY

A Borrower receiving monthly payments under the Loan Agreement has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 11 of this Note and then to reduce the principal balance of this Note.

All prepayments of the principal balance shall be applied by Lender as follows:

First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

Second, to that portion of the principal balance representing aggregate payments for servicing fees;

Third, to that portion of the principal balance representing accrued interest due under the Note; and

Fourth, to the remaining portion of the principal balance. A Borrower may specify whether a prepayment is to be credited to that portion of the principal balance representing monthly payments or the line of credit. If Borrower does not designate which portion of the principal balance is to be prepaid, Lender shall apply any partial prepayments to an existing line of credit or create a new line of credit.

## 7. IMMEDIATE PAYMENT IN FULL

**(A) Death or Sale**

Lender may require immediate payment in full of all outstanding principal and accrued interest if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

**(B) Other Grounds**

Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than 12 consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorney's fees, associated with enforcement of this Note to the extent not prohibited by Applicable Law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**(D) Trusts**

Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

## 8. WAIVERS

Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless Applicable Law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

## 11. RELATIONSHIP TO SECOND NOTE

### (A) Second Note

Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

### (B) Relationship of Secretary Payments to this Note

Payments made by the Secretary shall not be included in the debt due under this Note unless:

(i) This Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, shall be included in the debt.

### (C) Effect on Borrower

Where there is no assignment or reimbursement as described in (B)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by Secretary, notwithstanding anything to the contrary in Paragraph 7 of this Note; or

(ii) Be obligated to pay interest under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraph 2 or 5 of this Note or any Allonge to this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____Helen G. St. Hilaire_____ (Seal)
**HELEN G. ST. HILAIRE**                                    - Borrower

_____ (Seal)
                                                            - Borrower

_____ (Seal)
                                                            - Borrower

_____ (Seal)
                                                            - Borrower

Pay to the order of

_____
Without recourse
_____ (Seal)
                                                            - Borrower
Generation Mortgage Company

_____M. Mavero_____ (Seal)
Nicole Mavero, AVP                                          - Borrower
Texas Capital Bank, NA
As Attorney-In-Fact for:
Generation Mortgage Company

## ALLONGE TO NOTE

**Loan Number:** ▮▮▮▮▮   **Loan Amount:** $195,000.00

**Mortgagor(s):** Helen G. St. Hilaire

Batch: ▮▮▮  **St. Hilaire**
Loan #'s: ▮▮▮▮▮
Investor: FNMA   Investor # ▮▮▮▮▮

**BoNY-CYPVLT**

**Property Address:** 123 GAMAGE AVENUE, AUBURN, ME 04210-4528

Allonge to one certain Note dated 8/31/2009, in favor of Generation Mortgage Company and executed by **Helen G. St. Hilaire**

### Pay To The Order Of:

**Nationstar Mortgage LLC d/b/a Champion Mortgage Company**

_____

### Without Recourse

Generation Mortgage Company

*[signature]*

_____
**Signature of Authorized Officer**

Alysse Prosnick, Vice President - Client Services
_____
**Printed/Typed Name of Authorized Officer**

Batch: St. Hilaire
BoNY-CYPVLT
Loan #'s:
Investor: FNMA   Investor #
Dup

# ALLONGE TO NOTE

**Loan Number:**             **Loan Amount: $195,000.00**

**Mortgagor(s):** Helen G. St. Hilaire

**Property Address:** 123 GAMAGE AVENUE,
AUBURN, ME 04210-4528

Allonge to one certain Note dated 8/31/2009, in favor of Generation Mortgage Company and executed by **Helen G. St. Hilaire**

**Pay To The Order Of:**

**Nationstar Mortgage LLC d/b/a Champion Mortgage Company**

_____

**Without Recourse**

Generation Mortgage Company

*[signature]*
_____
**Signature of Authorized Officer**

Sydney Christopher, Vice President - Closing
_____
**Printed/Typed Name of Authorized Officer**

A-46 LAN/586635934

**Skey#** 
**Loan**

# ALLONGE TO NOTE

This endorsement is a permanent part of the Note.

**NOTE DATE:** 8/31/2009

**BORROWER NAME:** HELEN G. ST. HILAIRE

**PROPERTY:** 123 GAMAGE AVENUE, AUBURN, ME 04210-4528

**PAY TO THE ORDER OF:**

**WITHOUT RECOURSE:**

CHAMPION MORTGAGE COMPANY BY ITS ATTORNEY IN FACT PHH MORTGAGE CORPORATION

*[signature]*

Signer: Farid Farghali
Title: Senior Servicing Operations Specialist

DOC ID: 010420630004 Type: GEN
Recorded: 04/04/2022 at 10:34:11 AM
Fee Amt: $22.00 Page 1 of 4
Black Hawk County Iowa
SANDIE L. SMITH RECORDER
File 2022-00019282

Prepared By and After Recording Return to:
PHH Mortgage Corporation
5720 Premier Park Drive, Bldg. 3
West Palm Beach, FL 33407

## LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that Nationstar Mortgage LLC, dba Champion Mortgage, ("Nationstar") a Delaware limited liability company, with its offices located at 8950 Cypress Waters Blvd, Coppell, Texas 75019 does now irrevocably make constitute and appoint (which appointment is coupled with an interest) PHH Mortgage Corporation, d/b/a PHH Mortgage Services ("PMC"), having an office at 1661 Worthington Rd, Ste 100, West Palm Beach, FL 33409, its true and lawful attorney-in-fact, for it and in its name, place and stead for the limited Actions listed below, exclusively for the mortgage loans (collectively, the "Mortgage Loans") identified on the bills of sale executed, delivered and conveyed by Nationstar (and/or any Nationstar entity) to Mortgage Assets Management, LLC (or an Affiliate or designee thereof), for which such authorization shall remain in effect until such time as PMC no longer acts as sub-servicer of the Mortgage Loans. Attached hereto as Exhibit A and incorporated herein as if fully set forth, are the dba Champion Mortgage name derivations.

As used in this Limited Power of Attorney, the term "Actions" shall mean and be limited to the following acts, in each case only with respect to the Mortgage Loans and in accordance with state and federal applicable laws:

    A.    to prepare, execute and record the applicable documents required to institute and complete assignments, foreclosures or deeds in lieu of foreclosure proceedings, including, but not limited to, the execution of notices of defaults, notices of sale, affidavits, powers of attorney, substitutions of trustees, assignments of mortgage, endorsements of notes, releases of lien, satisfactions, special warranty deeds, deeds of conveyances, deeds of reconveyance, assignments of sheriff's certificates of sale, assignments of bids, assignments of deficiency judgments, ramifications of sale, real estate listing agreements, real estate sales contracts and addenda, closing statements and closing documents, and any other documents required under any applicable laws or regulations, as may be necessary for the servicing of the Mortgage Loans;

    B.    to prepare, execute and deliver to individual Mortgagors, the applicable documents required to satisfy or record, under any applicable laws or regulation, all Mortgages, any deeds of trust, security deeds, mortgages, security agreements or any other instruments which constitute the first and/or the subordinate lien on real estate securing payment by a Mortgagor of a Mortgage Note (the "Mortgage Instruments") or instruments of conveyance and reconveyance;

    C.    to prepare and execute such documents or agreements as may be necessary to complete the sale of any REO acquired under the terms of any Mortgage or Mortgage Instrument;

    D.    to endorse checks in Nationstar's name; and

    E.    to prepare and execute such documents as may be necessary to correct errors and to replace missing documents pertaining to the Mortgage Loans, or modify, supplement, correct and/or amend any Mortgage Loan Documents, as required by applicable law or regulation, investors, insurers or custodians.

With respect to the Actions, Nationstar gives to PMC, as its attorney-in-fact, full power and authority to execute such instruments and to do and perform all and every act and thing requisite, necessary, and proper to carry into effect the power or powers granted by or under this Limited

742712039.2

(22)

4

Power of Attorney as fully, to all intents and purposes, as the undersigned might or could do, and hereby does ratify and confirm all that said attorney-in-fact shall lawfully do or cause to be done by authority hereof.

Nothing contained herein shall be construed to grant PMC the power to (i) initiate or defend any suit, litigation, or proceeding in the name of Nationstar or be construed to create a duty of Nationstar to initiate or defend any suit, litigation, or proceeding in the name of PMC, (ii) incur or agree to any liability or obligation in the name of or on behalf of Nationstar, or (iii) execute any document or take any action on behalf of, or in the name, place, or stead of, Nationstar, except as provided herein. This Limited Power of Attorney is entered into and shall be governed by the laws of the State of New York without regard to conflicts of law principles of such state. Capitalized terms used but not defined in this Limited Power of Attorney shall have the meanings set forth in the Purchase Agreement.

*[Remainder of page intentionally left blank]*

IN WITNESS HEREOF, I have signed this document as of the 7th day of March, 2022.

By: _____
Name: Sylvia Ramirez
Title: Vice President

Attest: _____
Name: Tsedale Alemu
Title: Vice President

STATE OF Texas §
COUNTY OF Denton §

On **MAR 0 7 2022**, before me **Valencia Metcalf**, the undersigned, a Notary Public in and for said state, personally appeared **Sylvia Ramirez** of Nationstar Mortgage LLC, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that [she/he] executed that same in [her/his] authorized capacity, and that by [her/his] signature on the instrument the entity upon behalf of which the person acted and executed the instrument.

Signed and delivered in the presence of: _____
Notary Public   Valencia Metcalf

VALENCIA METCALF
Notary Public, State of Texas
Comm. Expires 02-28-2023
Notary ID 128535414

Commission expires: **FEB 2 8 2023**

Exhibit A.

Champion Mortgage Company
Champion Mortgage
Champion Mortgage Company LLC
Champion Mortgage Company of Texas
Champion Mortgage of Ohio
Nationstar HECM Loan Trust 2015-1
Nationstar HECM Loan Trust 2015-2
Nationstar HECM Loan Trust 2016-1
Nationstar HECM Loan Trust 2016-2
Nationstar HECM Loan Trust 2016-3
Nationstar HECM Loan Trust 2017-1
Nationstar HECM Loan Trust 2018-1
Nationstar HECM Loan Trust 2018-2
Nationstar HECM Loan Trust 2018-3
Nationstar HECM Loan Trust 2019-1